IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

DANIEL HERNANDEZ,

Plaintiff

v.

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

Defendant

NO. EP-15-CV-338-MAT

## OPINION

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Daniel Hernandez appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **REVERSED** and the action **REMANDED**.

### I. PROCEDURAL HISTORY

Hernandez was twenty-eight years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (R. 29).[2] He has an associate's degree and has worked as a commercial truck driver, satellite dish installer, construction laborer, and basic energy and oil

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this case.
[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

1

field worker. (R. 29, 176). Hernandez filed applications for DIB and SSI on August 27, 2012, in which he alleged disability beginning July 26, 2012, due to chronic heart disease and as a result of having suffered at least one stroke. (R. 152-59, 188). After his applications were denied initially and upon reconsideration, Hernandez requested a hearing. (R. 113-14). On March 20, 2014, a hearing was conducted before the ALJ. (R. 24-46). On June 18, 2014, the ALJ issued a written decision denying benefits on the ground that Hernandez was capable of performing jobs that exist in significant numbers in the national economy. (R. 13-19). On September 20, 2015, the Appeals Council denied Hernandez's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1-3).

In her written decision, the ALJ found that Hernandez had the following severe impairments: status-post cerebral vascular accident (stroke) with residual hemiparesis of the left hand; congestive heart failure, status-post implantable cardioverter defibrillator; hypertension; obesity; and obstructive sleep apnea. (R. 14). The ALJ found that Hernandez had the residual functional capacity to:

> lift and carry up to 20 pounds occasionally, 10 pounds frequently, and stand, walk, or sit for up to six hours of an eight-hour workday. Further, he can occasionally stoop, kneel, crouch, and crawl and occasionally handle and finger with the left non-dominant hand. However, he must avoid exposure to hazardous conditions such as unprotected heights and dangerous moving machinery.

(R. 15). Hernandez argues that the ALJ erred in finding his congestive heart failure did not meet or equal the requirements of Listing 4.02. (Pl.'s Br., ECF No. 20, at 2).

## II. DISCUSSION

A. STANDARD OF REVIEW

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the

2

Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citation omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted). If the Commissioner applied the proper legal standards and the findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. CHRONIC HEART FAILURE, LISTING 4.02

From July 30, 2012, through August 1, 2012, Hernandez was hospitalized and the discharge diagnoses were new stroke, left hemiparesis, old stroke present, obesity, hypertension, and obstructive sleep apnea. (R. 318-57). The sole issue presented by Hernandez is whether his congestive heart failure meets or equals the requirements of Listing 4.02. (Pl.'s Br., ECF No. 20, at 2). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a

3

severe, medically-determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The claimant bears the burden of proving through the use of medical findings that he meets a listing at step three of the sequential evaluation process. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *see also McCuller v. Barnhart*, 72 F. App'x 155, 158 (5th Cir. 2003). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "The criteria in the medical listings are 'demanding and stringent.'" *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. "A claimant is deemed to be conclusively disabled if his impairments meet, or equal in severity, an impairment that is listed in the appendix to the Social Security regulations." *Calaforra v. Colvin*, No. 4:15-CV-02298, 2016 WL 7742785, at *12 (S.D. Tex. Sept. 15, 2016) (collecting cases).

To satisfy the requirements of Listing 4.02 for chronic heart failure, the claimant must show the following:

    A.    Medically documented presence of one of the following:

        1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC ["medical consultant"], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

   a. Dyspnea, fatigue, palpitations, or chest discomfort; or

   b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

   c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

   d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02.

5

The ALJ concluded that Hernandez's congestive heart failure did not satisfy the requirements of Listing 4.02. Specifically, she provided that:

> Under listing 4.02, entitled chronic heart failure, the claimant must demonstrate a required systolic or diastolic failure resulting in persistent symptoms of heart failure. The claimant's systolic or diastolic testing does not demonstrate such failure (Exhibit 6F, p.3; 9F, p. 50, 71).

(R. 15).

In *Audler v. Astrue*, the Fifth Circuit vacated and remanded a district court decision affirming a finding by an ALJ that a claimant failed to meet the requirements of a step three listing. 501 F.3d 446, 448-49 (5th Cir. 2007). In conducting the step three analysis, the ALJ did not identify the listed impairment at issue or provide any explanation as to how she reached the conclusion that the claimant's symptoms did not meet the elements of the listing. *Id.* at 448. The Fifth Circuit explained that "[a]lthough the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, 'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'" *Id.* (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172) (4th Cir. 1986)). "Applying *Audler*, courts have found that even when an ALJ specifically identifies a listing at step three, he/she errs by failing to discuss the medical evidence and provide the reasons for the step three determination because such failure prevented meaningful judicial review." *Woods v. Colvin*, No. 3:14-CV-1990-B-BH, 2015 WL 5311142, at *11 (N.D. Tex. Aug. 26, 2015) (collecting cases).

Here, the ALJ failed to sufficiently explain why Hernandez's congestive heart failure did not meet or equal the impairment defined in Listing 4.02. Although the ALJ identified the specific listing for chronic heart failure, she only provided the following explanation as to why Hernandez's congestive heart failure did not qualify: "The claimant's systolic or diastolic testing

does not demonstrate such failure (Exhibit 6F, p.3; 9F, p. 50, 71)." (R. 15). The first medical record, 6F, p.3, is an echocardiographic report from an examination on December 6, 2012, showing that Hernandez's estimated ejection fraction was 40-45%. (R. 391). However, the final medical record, 9F, p. 71, is a report dated March 4, 2013, describing an echocardiogram which revealed an ejection fraction of 15-20%, a figure confirmed by an MRI. (R. 525).[3] An ejection fraction of 15-20% satisfies the requirement of an ejection fraction of 30% or less found in Listing 4.02A1. The minimal discussion by the ALJ does not address this apparent discrepancy, and thus it fails to provide the Court with the opportunity for meaningful judicial review.

The Court must still determine whether this error was harmless. *Audler*, 501 F.3d at 448 (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). As noted above, one of the medical records cited by the ALJ appears to satisfy the first element of Listing 4.02. A January 14, 2013, MRI, possibly the same one cited by the March 4, 2013, medical report, recorded an ejection fraction of 19%. (R. 452-53). Moreover, a letter from Lorena Gomez, M.D., dated January 10, 2014, asserts that Hernandez had an ejection fraction of 20%, though the basis for this statement is not provided. (R. 571). Together, these medical records reflect the genuine possibility that Hernandez may have had an ejection fraction below 30% for at least a year, which would satisfy the first element of Listing 4.02. The ALJ did not address the second element of Listing 4.02, and it is difficult to conclusively determine whether Hernandez would satisfy one of the criteria. However, given Hernandez's numerous serious medical issues, it is entirely possible that one of the criteria for that element may have been met. Thus, the Court concludes that Hernandez's substantial rights have been affected.

---

[3] There is no indication the echocardiogram or MRI were administered during an episode of acute heart failure.

Finally, the Court finds it appropriate to emphasize the seriousness of the well-documented medical issues Hernandez has suffered and continues to endure. The ALJ determined that Hernandez had several severe impairments at the time of his hearing, including ongoing issues relating to his strokes, congestive heart failure, hypertension, and obesity. Upon remand, if the ALJ determines that Hernandez has met the first element of Listing 4.02, the Court strongly urges the ALJ to order testing to determine whether Hernandez is unable to perform on an exercise tolerance test at a workload equivalent to 5 METs due to the reasons enumerated in Listing 4.02B. This testing would both serve the interest of justice and protect against possible further remand at a later date. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts."); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(C)(6)(a)(i) ("We will consider whether to purchase an exercise test when: There is a question whether your cardiovascular impairment meets or medically equals the severity of one of the listings, or there is no timely test in the evidence we have (see 4.00C), and we cannot find you disabled on some other basis . . . .").

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **REVERSED** and the action **REMANDED** for further administrative proceedings consistent with this Opinion.

**SIGNED and ENTERED** this 14th day of June, 2018.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

8